UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HIGHER TASTE, a Washington non-
profit corporation,

                    Plaintiff,

        v.

CITY OF TACOMA, a metropolitan
municipal corporation; METROPOLITAN
PARK DISTRICT OF TACOMA, a
department of the City of Tacoma; JACK
C. WILSON, Executive Director of the
Metropolitan Park District of the City of
Tacoma,

                    Defendants.

CASE NO. C10-5252BHS

ORDER DENYING PLAINTIFF'S
MOTION FOR AN AWARD OF
ATTORNEY'S FEES AND
EXPENSES PURSUANT TO
42 U.S.C. § 1988

       This matter comes before the Court on Plaintiff's Motion for an Award of

Attorney's Fees and Expenses Pursuant to 42 U.S.C. § 1988 (Dkt. 44). The Court has

considered the pleadings filed in support of, and in opposition to, the motion and the

remainder of the file.  For the reasons stated herein, the Court denies the motion.

## I. PROCEDURAL HISTORY

       The complaint in this action was filed on April 14, 2010.  Dkt. 1.  On April 15,

2010, Plaintiff Higher Taste moved for a temporary restraining order ("TRO") and for

preliminary injunction against Defendants.  Dkt. 2.  After reviewing Defendants'

1   opposition, and Higher Taste's reply, on April 21, 2010, the Court denied the TRO but

2   set a hearing on the motion for preliminary injunction for May 18, 2010.  Dkt. 15.  In

3   advance of that hearing, the parties filed supplemental briefings.  *See* Dkts. 18, 21, 24.

4   The Court heard oral argument on May 18, 2010 (Dkt. 26) and, on June 4, 2010, issued a

5   ruling granting preliminary injunction in Higher Taste's favor.  Dkt. 30.

6          Also on June 4, 2010, the Court issued two minute orders concerning discovery-

7   related issues, joint status report, and early settlement.  *See* Dkts. 31-32.  Between

8   September 14, 2010 and June 3, 2011, the parties filed four separate motions to extend

9   dates for initial disclosures and joint status report.   *See* Dkts. 33, 35, 38, 40.  In each

10  motion, the parties represented that they were "currently engaged in settlement

11  negotiations" and needed an extension "to devote their time and resources toward

12  settlement  . . .  as opposed to concentrating on discovery processes that may prove to be

13  unnecessary."  *Id.*   The Court granted each of the parties' requests for extension.  *See*

14  Dkts. 34, 36, 39, 41.

15         On August 24, 2011, the parties filed a Stipulation for Entry of Order of Dismissal

16  pursuant to Fed. R. Civ. P. 41(A)(1)(ii).  Dkt. 42.  In the stipulation, the parties repeated

17  that they had reached a settlement agreement, but requested that "[Higher Taste's]

18  asserted claim for attorney's fees and costs . . . be separately resolved by motion pursuant

19  to 42 U.S.C. § 1988," which Higher Taste anticipated filing within 30 days of the order of

20  dismissal.  *Id.* at 2.  On August 29, 2011, the Court dismissed the matter with prejudice.

21  Dkt. 43.

22

On September 26, 2011, Higher Taste filed the instant motion for attorney's fees and expenses against Metropolitan Park District of Tacoma ("Metro").  Dkt. 44.  On October 17, 2011, Metro responded.  Dkt. 45.  On October 20, 2011, Higher Taste replied.  Dkt. 49.  On October 25, 2011, Metro surreplied.  Dkt. 52.

## II. FACTUAL BACKGROUND

Although the Court has previously presented factual accounts of this matter, including in its order denying TRO and its order granting preliminary injunction (Dkts. 15, 30), the Court recounts some of the facts relevant to the resolution of this motion.

This action involved the constitutional implications of Higher Taste's activities at or around the Point Defiance Zoo and Aquarium ("Zoo") in Tacoma, Washington. Higher Taste is a nonprofit religious organization that places "particular ideological emphasis on the relationship between religion and nature," and, as part of that mission, has sought since 1993 to display, sell, or exchange for donation message-bearing T-shirts on the public walkways "leading to and in front of the Zoo."[1]  Dkt. 1 at 3-4.  In its

---

[1] In furtherance of that mission, Higher Taste explains:

 [Its] members distribute literature to interested persons, and discuss such issues as global warming, toxic waste, vegetarianism and animal protection, God-centered ecology, and pollution of the environment.  [Higher Taste] also provides a sanctuary for animals where they will be cared for and treated humanely, and under no circumstances subject to torture.  T-shirts depicting a message directly related to [Higher Taste's] mission and activities are also displayed and offered for sale, or distributed in exchange for a voluntary donation, in order to disseminate [Higher Taste's] message, and to raise funds for its activities, including the sanctuary.

Dkt. 1 at 3.  Dkt. 15 at 2.

1   complaint, Higher Taste alleged that, in 1995, Metro instituted a "permit system" that

2   sought to impose a "vendor fee" and to limit Higher Taste's permit periods. *Id*. at 4.

3   Higher Taste formally protested this measure, which was never enforced. *Id*.

4         In 2005, Metro adopted Resolution No. 40-05 ("Resolution), which Higher Taste

5   claimed banned the sale of any items, including literature and message-bearing T-shirts

6   "within the entranceway to the . . . [Zoo] or the parking area adjacent thereto." *Id*. at 4-

7   5.[2] Higher Taste alleged that Metro prohibited it from conducting its activities in front of

8   the Zoo following the passage of the Resolution, but conceded that Metro provided an

9   alternate location for the same activities. *Id*. at 5.  Nevertheless, Higher Taste claimed

10  that it was not satisfied with the alternate location as it, in Higher Taste's view, "severely

11  impaired" its ability to connect with a majority of the people visiting the Zoo. *Id*.

12  Moreover, Higher Taste alleged that, as of June 2010, Metro discontinued Higher Taste's

13  activities in the alternate location as well. *Id*.

14        In the lawsuit that followed, Higher Taste claimed in principal part that the 2005

15  Resolution violated the First and Fourteenth Amendments of the U.S. Constitution for

16  banning the distribution of message-bearing T-Shirts, by sale or donation, on the public

17  walkways leading to and in front of the Zoo. *Id*. at 3.  Higher Taste essentially sought

18

19

20        [2] In 2007, at Metro's request, the City of Tacoma passed Municipal Code § 8.27.090. *Id*.
    at 5.  This ordinance provides that "No person, except duly authorized concessionaires, and those
    having a specific permit, shall sell or offer for sale in any park any goods, refreshments,
21  photographs, or other articles." *Id*. (quoting § 8.27.090).  At the May 18, 2010, preliminary
    injunction hearing, the parties noted that the litigation did not concern Tacoma, Wash. Mun.
22  Code § 8.27.090.  Instead, Higher Taste only sought to challenge the constitutionality of
    Resolution No. 40-05.

1   (1) a preliminary and permanent injunction prohibiting Defendants from enforcing the

2   Resolution and Ordinance, and (2) a declaration that the Resolution, on its face and as

3   applied to the sale or distribution of literature and message-bearing T-shirts on the public

4   walkways in front of the Zoo, was unconstitutional.

5           In its order granting preliminary injunction, the Court enjoined Metro from

6   enforcing the Resolution against Higher Taste's First Amendment-protected activities at

7   the Zoo.  Dkt. 30.  In so doing, the Court reasoned that, although Metro had "significant"

8   governmental interests, "on the record before the Court, the Court cannot conclude that

9   Metro ha[d] met its burden of establishing that the resolution [wa]s narrowly tailored to

10  achieve the stated significant interest of aesthetics . . . [or] of safety."  Dkt. 30 at 9.  The

11  Court ordered the parties to "meet and confer to determine a reasonable arrangement,

12  consistent with th[e] order, that enable[d] [Higher Taste] to continue selling its T-shirts

13  and otherwise conducting its free speech activities at the Zoo."  *Id.* at 11.

14          Following the Court's ruling, the parties met and conferred and, in or about

15  August 2011, reached agreement "regarding First Amendment activities at the Point

16  Defiance Zoo & Aquarium."  Dkt. 42 at 1.  Claiming that it is a "prevailing party" under

17  42 U.S.C. § 1988(b), Higher Taste now moves for an award of attorney's fees and costs.

18                              **III. DISCUSSION**

19          The Civil Rights Attorney's Fees Awards Act of 1976 authorizes district courts to

20  award reasonable attorney's fees to a "prevailing party."  42 U.S.C. § 1988(b).  The Act

21  reads in relevant part:  "In any action or proceeding to enforce a provision of section[] . . .

22

1   1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party . . . a

2   reasonable attorney's fee as part of the costs." *Id.*

3          The analysis of the parties' positions begins with the Supreme Court's holding in

4   *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532

5   U.S. 598 (2001), which (1) eliminated the "catalyst theory" as a means for plaintiffs to

6   recover attorney fees where they had obtained their desired results without final court

7   action, and (2) required for recovery of attorney fees the existence of a "*judicially*

8   *sanctioned* change in the legal relationship between the parties." *Buckhannon*, 532 U.S.

9   at 605 (emphasis added); *see also Sole v. Wyner*, 551 U.S. 74, 82 (2007) ("[t]he

10  touchstone of the prevailing party inquiry . . . is the material alteration of the legal

11  relationship of the parties").  As examples of the kind of "judicial imprimatur" to which it

12  referred, the *Buckhannon* court mentioned "judgment on the merits . . . [and] settlement

13  agreements enforced through a consent decree. *Buckhannon*, 532 U.S. at 605.

14         Here, Higher Taste contends that it "prevailed" under § 1988 on two grounds.

15  First, Higher Taste argues that, by securing a preliminary injunction, it "prevent[ed]

16  [Metro] from banning the sale of message-bearing T-shirts" and, therefore, altered the

17  "legal relationship between [the parties]." Dkt. 44-1 at 10.  Second, Higher Taste argues

18  that the legal relationship between the parties changed when they entered into a legally

19  enforceable settlement agreement.  The Court will address each argument in turn.

20  **A.     Preliminary Injunction**

21         The first question facing the Court is whether its June 2010 grant of preliminary

22  injunction conferred prevailing party status onto Higher Taste.  Higher Taste argues that

1   the Court's preliminary injunction order "reflect[s] an assessment of the merits . . . which

2   when combined with a successful resolution of the case in [its] favor, establishes a

3   compelling claim to fees on its part." Dkt. 44-1 at 11. While the Court agrees with

4   Higher Taste that preliminary injunctions in certain cases can trigger § 1988 fee awards,

5   the Court disagrees that this is such a case.

6        In its preliminary injunction order, the Court acknowledged that Higher Taste had

7   established a likelihood of success on the merits, but specifically qualified its ruling that

8   Metro had not established the Resolution's constitutionality *on the then-present record*.

9   *See* Dkt. 30 at 8 ("on the current record before the Court"); *id*. at 9 ("on the record

10  currently before the court"); *id* ("the present record"); *id*. at 10 ("on this record"). In so

11  doing, the Court at least twice intimated that Metro could in fact ultimately prevail on

12  further evidence. Dkt. 30 at 9 ("Metro may ultimately be able to justify such an

13  expansive area of restriction . . ."); *id.* at 11 ("the Court is not deciding whether the

14  resolution is ultimately unconstitutional"). At the time, the Court issued minute orders

15  concerning discovery-related issues. The parties thereafter opted to engage in settlement

16  discussions and conducted no discovery. As a result, the Court was not provided with

17  any further evidence of the merits of each side's position from which to ascertain the

18  ultimate merits of Higher Taste's claim. And, once the parties settled the matter, the

19  preliminary injunction dissolved. *See id.* at 11 (noting that the preliminary injunction

20  would stay in effect only "until the matter is resolved, at which time the injunction may

21  be lifted . . . ."). Under these circumstances, the Court finds that the injunction did not

22  qualify as an enforceable judgment on the merits and that any corresponding "prevailing

ORDER - 7

1    party" designation is inappropriate.  *See Singer v. Mngt. Consultants, Inc. v. Milgram*,

2    650 F.3d 223, 231-32 (3d Cir. 2011) (denying fees where the injunction did not qualify as

3    an enforceable judgment on the merits) (citing *Buckhannon*, 532 U.S. at 606) (citations

4    omitted); *Northern Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1085-86 (8th Cir. 2006)

5    ("refusing to award fees where the case was mooted by defendant's voluntary conduct—

6    and not as a consequence of the preliminary injunction").

7        The one Ninth Circuit case (post-*Buckhannon*) that Higher Taste cites relevant to

8    this issue does not warrant a different result.  In *Taylor v. Westley*, 525 F.3d 1288 (9th

9    Cir. 2008), the Ninth Circuit awarded attorney fees after "extensive litigation" in which

10   the plaintiff prevailed twice in the court of appeals, won an injunction after an appellate

11   court mandate, and caused the State of California to completely change its escheat law.

12   *Id*. at 1289-90.  In that case, the Ninth Circuit held that "[it] was quite plain . . . that there

13   was no room at all for the State to keep things as they were."  *Id*. at 1290.  Here, by

14   contrast, the Court unequivocally deemed the preliminary injunction as not a final

15   decision on the merits.  Moreover, although the Court enjoined Metro for the time being

16   from enforcing the Resolution, the Court in effect dissolved the injunction once the

17   parties settled.

18       Accordingly, because the Court finds that the preliminary injunction at issue does

19   not confer prevailing party status, the Court turns to Higher Taste's second argument.

20   **B.    Settlement**

21       Higher Taste next argues that it prevailed in this litigation insofar as the parties'

22   settlement agreement provided "*everything* it sought in the litigation," was "prompted"

1    by the preliminary injunction order, and was an "outgrowth" of the Court's meet-and-

2    confer instructions.  Dkt. 49 at 2 (emphasis in original); Dkt. 44-1 at 12 (arguing that the

3    "legally enforceable" settlement agreement was a "direct result of the litigation").

4           As an initial matter, the Court acknowledges that Higher Taste would likely not

5    have achieved what it claims it did achieve in the settlement without the lawsuit.  But, as

6    noted above, the Supreme Court has firmly rejected the "catalyst theory" on which

7    Higher Taste's motion seemingly relies.  *Buckhannon*, 532 U.S. at 605.  That Court held:

8              Private settlements do not entail the judicial approval and oversight
               involved in consent decrees.  And federal jurisdiction to enforce a private
9              contractual settlement will often be lacking unless the terms of the
               agreement are incorporated into the order of dismissal . . . . A defendant's
10             voluntary change in conduct, although perhaps accomplishing what the
               plaintiff sought to achieve by the lawsuit, lacks the necessary judicial
11             imprimatur on the change.  Our precedents thus counsel against holding
               that the term "prevailing party" authorizes an award of attorney's fees
12             without a corresponding alteration in the legal relationship of the parties.

13   *Id*. at 604-05.  Although there is some uncertainty as to what constitutes "judicial

14   imprimatur," "the existence of some judicial sanction is a prerequisite in this circuit for a

15   determination that a plaintiff is a 'prevailing party.'"  *P.N. v. Seattle Sch. Dist. No. 1*, 474

16   F.3d 1165, 1173 (9th Cir. 2007).

17          Here, the Court finds that the parties' agreement was a bilateral resolution that did

18   not require judicial approval nor was it incorporated into the Court's order dismissing this

19   action.  Although both parties now attempt half-heartedly to inject into the current

20   briefings references to the settlement agreement and its terms, the Court cannot evaluate

21   those terms for approval or retroactively incorporate them as part of the record in a matter

22   that the parties stipulated to dismissing with prejudice.  *See Buckhannon*, 532 U.S. at 604

1  n. 7 ("[p]rivate settlements do not entail the judicial approval and oversight involved in

2  consent decrees" or the "federal jurisdiction to enforce.").[3]

3      Indeed, it is on this fundamental point that the Court finds Higher Taste's reliance

4  on *Barrios v. Cal. Interscholastic*, 277 F.3d 1128 (9th Cir. 2002), and *Richards v. Bell*,

5  317 F.3d 1080 (9th Cir. 2003), misplaced.  In both cases, the courts incorporated into

6  their dismissal orders the principal contents of the settlement agreement.  *See Barrios*,

7  277 F.3d at 1133 (settlement agreement provided that plaintiff paraplegic seeking relief

8  under the American With Disabilities Act would receive $10,000 in compensatory

9  damages and would "be allowed to coach baseball on the field, absent a material change

10  in his ability to coach or in his wheelchair"); *Richards*, 317 F.3d at 1088 (settlement

11  agreement was not a private agreement where the parties "stated the terms on the record"

12  and the "agreement was reduced to writing and was filed with the district court"); *cf.*

13  *Citizens for Better Forestry v. U.S. Dep't of Agr.*, 567 F.3d 1128, 1132 (9th Cir. 2009)

14  (distinguishing *Richards*, 317 F.3d 1080, and denying fees on grounds that although

15  plaintiff had received a ruling that defendant had violated its constitutional rights,

16  plaintiff had not received any formal declaratory judgment or other relief).

17      In contrast to *Barrios* and *Richards*, here, the stipulation for entry of order for

18  dismissal merely stated that the parties "ha[d] reached an agreement regarding First

19

20      [3] The Court admonishes both parties for seeking to introduce as part of this motion
21  evidence of the settlement terms and/or correspondence.  The Court is limited to the review of
   the record that existed at the time that this matter was dismissed.  That Higher Taste preserved
   the right to move for attorney fees at the time of dismissal does not open the door for it or for
22  Metro to request consideration of new materials that are beyond the scope of this motion.

1    Amendment activities at the Point Defiance Zoo & Aquarium"—and nothing more.  Dkt.

2    42 at 1.  Likewise, the proposed order, which the Court executed, made no reference to

3    the settlement agreement.  Dkts. 42-1, 43.  Absent incorporation of the terms of the

4    settlement, this Court has nothing to enforce moving forward.  Indeed, the Court is not in

5    a position to state whether or not the settlement agreement between the parties is in fact

6    legally enforceable.  If Higher Taste disagrees with Metro's conduct under the agreement,

7    then it can seek to enforce its terms as part of a new lawsuit.   But, for purposes of this

8    motion in the current matter, the Court finds that the settlement agreement is not "legally

9    enforceable" in the manner that *Buckhannon* and its progeny require.

10          In short, the parties opted to settle, but settlement was not the only option.  It was a

11   consequence of a "voluntary change in conduct" that, although litigation likely triggered,

12   was not the result of a judicial sanction.  *Buckhannon*, 532 U.S. at 598-99 (a "voluntary

13   change in conduct" lacks the required "judicial imprimatur on the change"); *see also*

14   *Farrar v. Hobby*, 506 U.S. 103, 113 (1992) (a material alteration of the legal relationship

15   occurs when the plaintiff can force the defendant to do something the defendant would

16   otherwise not have to do).  Accordingly, the Court denies Higher Taste's motion.

17   **C.     Metro's Motion to Strike**

18          In its surreply, Metro moved to strike the following excerpts from Higher Taste's

19   reply materials: (1) new argument and factual showing in favor of the various attorneys'

20   fee requests—offered for the first time in reply; (2) argument and legal briefing through

21   attorney declaration, as a means of circumventing the page limitations; and (3) disclosure

22   of settlement correspondence.  Dkt. 52 at 1.  The Court agrees that it was improper for

1    Higher Taste to introduce in its reply certain new evidence, legal argument through its

2    declaration, and settlement correspondence.  That being said, the Court finds that much of

3    the objected-to material concerned the nature and amount of Higher Taste's counsel's

4    attorney fees, which are rendered moot in light of the Court's ruling that Higher Taste is

5    not a "prevailing party" under § 1988.  To the extent that the objected-to material related

6    to the question of whether or not Higher Taste was in fact a prevailing party, the Court

7    finds that there are sufficient grounds to deny Higher Taste's motion even if the Court

8    were to consider the objected-to material.  The Court has expressly stated the admissible

9    evidence that it relied upon in considering the motion.

10                                      **IV. ORDER**

11           Therefore, it is hereby **ORDERED** that Higher Taste's Motion for an Award of

12   Attorney's Fees and Expenses Pursuant to 42 U.S.C. § 1988 (Dkt. 44) is **DENIED**.

13           Dated this 22nd day of November, 2011.

14

15

16                                      BENJAMIN H. SETTLE
                                         United States District Judge

17

18

19

20

21

22

ORDER - 12